Siegel v. Brooke.

---

## FERDINAND SIEGEL AND HENRY SIEGEL

V.

## JAMES H. BROOKE ET AL.

*Sales—Implied Warranty of Title—Refusal to Accept—Letters Patent —Evidence.*

1. In sales of personal property, by one in possession thereof, there is an implied warranty of title in the vendor. If the contract is still executory the vendee may refuse to accept the article sold, unless the vendor makes him a clear title.

2. Where the article sold is covered by letters patent, held by a third person, the vendee may refuse to accept. Such incumbrance upon the right

to use the article sold is such a defect of title as will constitute a breach of the implied warranty of title.

3. In an action to recover the price of goods which the vendee has refused to accept, evidence tending to show that the goods are covered by letters patent, owned by a third person, is admissible.

[Opinion filed January 11, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

Messrs. FLOWER, REMY & GREGORY, for appellants.

It is difficult to see why these facts do not completely answer appellees' claim. A warranty of title is always implied upon a sale of chattels. either executory or *in præsenti*. Where the contract is executory there can be no doubt that if the seller tender an article to which he has defective title he does not comply with the contract of sale. The mere fact that he offers to put the purchaser in possession of the subject of the sale is not enough. He must be in a position to confer ownership thereof upon him.

So, where there is a contract for the sale of realty by which a good title is covenanted to be conveyed, the vendor can not, by tendering a conveyance where his own title is defective, and offering to let the vendee into possession, put himself into a position to recover the purchase price. The appellants were threatened, by parties claiming under the patents, with proceedings. They might have been enjoined from the sale of these goods, and in the same proceeding, had they sold any, been compelled to answer in treble damages. There can be no doubt that these patents so incumbered the title of appellees to these goods as to make them practically worthless to appellants.

That there is an implied warranty of an unincumbered title is well settled. Hilliard on Sales, 387; Fawcett v. Osborn, 32 Ill. 411; Morris v. Thompson, 85 Ill. 16.

Therefore, where articles are sold which infringe a patent, the purchaser may defend an action for the price on this ground. Sanborn v. Jackman, 60 N. H. 569; Story on Sales,

Siegel v. Brooke.

Sec. 367 b. It can not be contended that "a party can enjoy as his own," goods by the manufacture and sale of which, in the ordinary course of his business, he renders himself liable to heavy penalties, and from the sale of which he may be absolutely enjoined. The contract of sale being executory, the appellants had a right to reject the goods entirely, because their sale was an infringement of the patents offered in evidence. It is thought that this is the law. Neither reason nor authority make against it. But the New Hampshire case shows that as there was not a clear title made to the goods, the appellants had, in any view, a right to prove the existence of the patents, and that the goods were such as to come within the terms of the patents, in reduction of appellees' damages. This would be strictly recoupment. The court, in this case, excluded that evidence.

The case just cited is plain authority that the sale of a patented article by one other than the patentee, or his assigns, does not convey a good title.

Therefore, the appellants had a right to reject the goods sued for, as the contract of sale was executory. Had it been executed they would have had the right to reduce appellees' recovery by the damages sustained by them on account of this defect in title. In any aspect the evidence excluded should have been received.

Messrs. Abbott & Baker, for appellees.

Bailey, J. This was an action of assumpsit brought by James Henry Brooke and others against Ferdinand Siegel and another, to recover the price of certain goods sold by the plaintiffs to the defendants. The declaration consisted merely of the common counts, to which the defendants pleaded non-assumpsit. The trial before the court and a jury resulted in a verdict in favor of the plaintiffs for $1,096, and for that sum and costs the plaintiffs had judgment.

The plaintiffs are manufacturers of woolen goods at Huddersfield, England, and the defendants are manufacturers of ladies' cloaks at Chicago. In April, 1885, an agent of the

plaintiffs called on the defendants at their place of business in Chicago, and obtained from them an order for twenty pieces of worsted goods known as "stockinets," said goods to be thereafter manufactured by the plaintiffs and shipped by them in bond to Chicago. It appears that the plaintiffs had filled a previous order for the same kind of goods, and that said goods had been received and paid for by the defendants. The goods in question were manufactured by the plaintiffs and shipped in bond to Chicago, but the defendants, having in the meantime learned that said goods were covered by certain letters patent issued by the United States to one John Kent for a certain improvement in knitted fabrics, and being threatened by the owners of said letters patent with prosecution for an infringement in case they should receive said goods and use the same, as they had proposed to do, in the manufacture of cloaks, refused to receive the goods, and the same remained at the time of the commencement of this suit in the United States bonded warehouse at Chicago.

It does not appear that the defendants had any actual notice of the existence of said patent at the time they gave the plaintiffs' agent an order for said goods, and the evidence as to whether the plaintiffs or their agent had notice of its existence is somewhat conflicting, said agent testifying that both he and his principals were at that time entirely ignorant of the patent, while the defendants gave evidence tending to show a subsequent admission by said agent that at the time he sold said goods he was aware of its existence.

The defendants produced a duly authenticated copy of the letters patent and offered to read the same in evidence, and also offered to prove by evidence *aliunde* that the goods in question were covered by the patent. All of this evidence was excluded by the court, and the propriety of its exclusion is the principal question presented by this appeal.

The theory upon which the defendants sought to avail themselves of the letters patent as a defense was, that the patent constituted a defect of title in the nature of an incumbrance upon the goods and was therefore a breach of the plaintiffs' implied warranty of title. It is undoubtedly the

Siegel v. Brooke.

general rule that, in sales of personal property by one who is in possession thereof, there is an implied warranty of title in the vendor. Story on Sales, Sec. 266. If the contract of sale is still executory, the vendee may refuse to accept the article sold, unless the vendor makes him a clear title; but where the sale is consummated and the article delivered and accepted, the rule, though not fully settled, would seem to be that the vendee can maintain no action on the warranty so long as his title and possession are undisputed. *Ibid.*, Sec. 367 b.

As the goods were never received or accepted by the defendants, the validity of the defense excluded by the court depends upon whether the patent constituted or created a defect in the title thereto. It must be admitted that the letters patent gave the patentee no right or interest, general or specific, in the goods themselves. It gave him no title by which he could obtain possession of them or in any way subject them to his own use. The right secured to him was merely the monopoly of his discovery or invention, or, in other words, the exclusive right to make and use the patented article and to sell the same to others to be used. The patent right was undoubtedly a right essentially and numerically distinct from the title or ownership of the article manufactured according to the patented device. This distinction is clearly recognized in Patterson v. Kentucky, 97 U. S. 501, where the court say: "The right of property in the physical substance, which is the fruit of the discovery, is altogether distinct from the right in the property itself, just as the property in the instruments or plate by which copies of a map are multiplied, is distinct from the copyright of the map itself."

But while the patent gave the patentees no right to the goods themselves, it gave them a right to control or prohibit their use either by the defendants or others to whom they might sell them. The defendants might receive the goods and retain them in their possession, and so long as they did that and nothing more, they would, perhaps, be free from interference by the patentees. The instant, however, they attempted to use them or sell them to others to be used, they would be liable to prosecution by the patentees for an infringement, and might be wholly restrained from such use or sale.

It will thus be seen that the patent, while in no proper sense an incumbrance upon the goods themselves, was a very serious incumbrance upon their use. It deprived the defendants of the right to avail themselves of the beneficial enjoyment of the goods without subjecting themselves to serious consequences, some of them highly penal, and if they had received and paid for them, they would have been liable at once to be restrained by injunction from applying them to the purposes for which they bought them.

We are of the opinion that such incumbrance upon the right to use the article sold, is such defect of title as will constitute a breach of the implied warranty of title. The only case to which we have been referred, or which we have been able to find, in which this question has been directly presented, is Sanborn v. Jackson, 60 N. H. 569. In that case the plaintiff sold to the defendants, among other things, the machinery, tools, fixtures and furniture in a certain building, and also two machines then in process of construction, and agreed to have said machines finished and put in satisfactory running order at his own expense. In a suit brought to recover a part of the price of the property sold, the defendants offered to prove, among other things, that one of said machines was an infringement upon a patent owned by one Corey. This evidence was excluded, and the court, in holding that it was improperly excluded, say: "It was an incumbrance on the right to use the machine, constituting a defect in the title, if it was an infringement of Corey's patent. In the sale of chattels, there is ordinarily an implied warranty of title. The evidence offered by the defendants was competent as tending to show a defective title, and the breach of such implied warranty." While the Judge delivering the opinion of the court cites no authorities and gives no reasons for his conclusions beyond what we have here quoted, we are inclined to follow the decision as the most reasonable view to take of the subject. We hold, therefore, that the evidence in relation to the letters patent was improperly excluded and that for that reason the judgment must be reversed and the cause remanded.

*Judgment reversed.*